UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| SENSIENT TECHNOLOGIES CORPORATION, et al., ) ) ) Plaintiffs, ) ) vs. ) ) SENSORYFLAVORS, INC., et al., ) ) Defendants. ) | Case No. 4:08CV00336 ERW |

## MEMORANDUM AND ORDER

This matter comes before the Court on Sensient Technologies Corporation and Sensient Flavors LLC's Motion for a Preliminary Injunction [doc. #2], in which these parties seek a temporary restraining order. A hearing was held on this matter on March 18, 2008.

Sensient Technologies Corporation and Sensient Flavors LLC (collectively, "Plaintiffs") have brought this action against SensoryFlavors, Inc., Performance Chemicals & Ingredients Co., Diehl Food Ingredients, Inc., and Highlander Partners, L.P. (collectively, "Defendants") alleging federal trademark infringement, unfair competition and false advertising under the Lanham Act, as well as common law trademark infringement and unfair competition, and trademark infringement and trademark dilution claims under Missouri law. Plaintiffs seek a temporary restraining order retraining SensoryFlavors, Inc. ("SensoryFlavors") and its servants, agents, employees, successors, assigns, and all others acting in privity or in concert with SensoryFlavors, from:

a. using in any manner the SensoryFlavors name and logo or any related or derivative marks;
b. using the Sensient marks, including but not limited to, Sensient Flavors, or any mark confusingly similar to the Sensient marks of any related or derivative marks, on or in connection with any unauthorized goods or services;

- c. disseminating, using or distributing any advertising or promotional materials, electronic or otherwise, that contain the SensoryFlavors name and logo, the Sensient marks, or any mark confusingly similar to the Sensient marks;
- d. disseminating, using or distributing any advertising or promotional materials, electronic or otherwise, that state or imply that SensoryFlavors is an authorized distributor of or are otherwise connected to Sensient;
- e. using the SensoryFlavors name and logo, the Sensient marks, or any mark confusingly similar to the Sensient marks in any other manner likely to cause confusion, mistake or deception as to the source or sponsorship of SensoryFlavors' goods or services;
- f. holding themselves, and/or any business they are connected with, out to the public as being authorized by Sensient, or as being affiliated with or sponsored by Sensient in any manner, or committing any acts likely to imply such a relationship or affiliation;
- g. passing off their products and services as originating with or sponsored or authorized by Sensient;
- h. using and/or operating the URL, www.sensoryflavors.com;
- i. further diluting the distinctive value of the Sensient marks; and
- j. using or disseminating an false or misleading statements as to the nature, qualify, or characteristics of SensoryFlavors goods and services.

## I. BACKGROUND[1]

Sensient Technologies is a global business based in Milwaukee, Wisconsin. Sensient Flavors is one of the wholly-owned subsidiaries of Sensient Technologies. Sensient Technologies and its subsidiaries develop, manufacture and distribute proprietary flavor, fragrance, and color systems that are the essential components of thousands of food, beverage, household care, and personal products around the world. Sensient Technologies has been involved in the food marketplace for more than 125 years.

Before 2000, Sensient Technologies was known as Universal Foods Corporation and owned numerous disparately named subsidiaries. In 2000, Universal Foods Corporation decided to re-brand itself by coining the mark "Sensient." Sensient Technologies has invested significant

---

[1] These facts are taken from Plaintiff's Brief in Support of Motion for a Preliminary Injunction and Defendant's Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction.

2

time and millions of dollars in the effort to develop a new corporate identity. Sensient Technologies renamed itself and substantially all of its subsidiaries, including Sensient Flavors, with names incorporating the flagship brand.

Sensient Technologies' federally registered Sensient trademark, the trademark and trade name Sensient Flavors, as well as numerous related "Sensient" trademarks and trade names, are featured prominently on Sensient Technologies and Sensient Flavors' websites, in all Sensient marketing materials, on advertising, packaging, and labeling for Sensient's product, and on business cards, letterhead, and the like.

Charles Nicolais ("Nicolais") is the president of SensoryFlavors. From February 2004 through July 2005, Nicolais was the head of Sensient Colors, Inc. in St. Louis, Missouri. Sensient Colors, Inc. is a subsidiary of Sensient Technologies and a sister company of Sensient Flavors. SensoryFlavors is a newly-formed company that was recently acquired through the purchase of the dairy and ice cream flavors business of Givaudan Flavours North America ("Givaudan").[2] Givaudan and Sensient Flavors were direct competitors in the ice cream, novelty and dairy markets, and the new company SensoryFlavors will also compte directly with Sensient Flavors in this market. Plaintiffs allege that the similarity of the name SensoryFlavors to Sensient Flavors could not have been a coincidence due to the fact that SensoryFlavors' President, Nicolais, was formerly the President of Sensient Colors, Inc.

Defendants respond that the business SensoryEffects was established in 2004 after the re-branding of Loders Croklaan USA, LLC. They state that Plaintiffs did not object to the use of this name, and the SensoryEffects mark has been registered since 2004. Defendants state that

---

[2] Plaintiffs spell this business name as Givaudan Flavours North America, while Defendants write Givaudan Flavors North America.

3

when they acquired Givaudan, they desired to build on the goodwill of the well-known SensoryEffects mark and name and develop a similar mark and name for their recently acquired flavor business. Defendants state that the name SensoryFlavors was developed by replacing the generic term "Effects" which can mean "inclusions" in the food industry, with the equally generic term "Flavors" from Givaudan, resulting in the name SensoryFlavors.

Since the acquisition of Givaudan, SensoryFlavors has sent out correspondence to its various contacts in the specialty food ingredients industry announcing the acquisition. This letter features the SensoryFlavors mark. On that same date, SensoryFlavors and Givaudan both sent their own media releases announcing the acquisition. The SensoryFlavors media release included the SensoryFlavors mark. Since the acquisition, SensoryFlavors has given two presentations to customers using the SensoryFlavors mark. Defendants state that under the agreement to purchase the assets from Givaudan, SensoryFlavors is currently using Givaudan's marks on packaging and labels. However, this agreement is for a limited term, and SensoryFlavors is already past the time in which it could use Givaudan's marks on literature, and states that it must be permitted to use the SensoryFlavors name or must transition to a new name as soon as possible.

## II. DISCUSSION

A temporary restraining order may only be issued if "immediate and irreparable injury, loss, or damage will result to the applicant if the order does not issue." Fed. R. Civ. P. 65(b). The factors that must be weighed prior to issuing a temporary retraining order are the same as the factors used in determining whether to grant a preliminary injunction. *See A&D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126, 132 (Fed. Cl. 2006). The factors that the Court must consider are: "(1) the threat of irreparable harm to the movant; (2) the state of the balance

4

between the harm and the injury in granting the injunction will inflict on the other party; (3) the probability of the movant succeeding on the merits; and (4) the public interest." *Phelps-Roper v. Nixon*, 509 F.3d 480, 484 (8th Cir. 2007) (*citing Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). This litigation involves trademark law, and whether Plaintiffs are able to show the likelihood of success on the merits directly impacts whether the threat of irreparable harm exists. Accordingly, the Court will address these elements in a slightly different order than they are listed above.

## *A.    PROBABILITY OF SUCCESS ON THE MERITS*

The Court finds that Plaintiffs will likely prevail on their claims of trademark infringement and unfair competition under both the Lanham Act and Missouri law as well as their claims under Missouri's anti-dilution statute. As Plaintiffs only need to demonstrate their probability of success on one of their claims, for the purposes of this Motion, the Court will limit its inquiry to Plaintiffs' claim of trademark infringement under the Lanham Act.

The Lanham Act "prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services." *Davis v. Walt Disney Co.*, 430 F.3d 901 (8th Cir. 2005); 15 U.S.C. § 1125(a)(1). Whether the similarity is "likely to cause confusion as to the source or sponsorship of the goods or services" requires consideration of six factors. *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005). These factors are:

> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's mark and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers, and 6) evidence of actual confusion.

5

*Davis*, 430 F.3d at 903. "None of these factors alone is dispositive." *Bebe Stores, Inc. v. May Dept. Stores Intern., Inc.*, 230 F.Supp 2d 980, 991 (E.D. Mo. 2002).

Under the first factor, a mark can be classified into the following "categories of generally increasing distinctiveness; . . . "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A fanciful mark is the strongest kind of mark, and is a mark that "bears no logical relationship to the product or service it is used to represent." *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1357-58 (11th Cir. 2007) (using the example of "Kodak"). Sensient is a fanciful word that was coined for the express purpose of functioning as a trademark, brand, and corporate family of names. The Court agrees with Plaintiffs that Sensient is a fanciful mark entitled to the broadest protection. *Two Pesos, Inc.*, 505 U.S. at 768.

While Sensient is entitled to broad protection, Plaintiffs cannot claim an exclusive right to the "Flavors" portion of Sensient Flavors. Flavors is a generic term as it "does not identify the source of a product, but rather indicates the basic nature of the product." *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 974 (8th Cir. 2006). At best, Flavors may be a descriptive mark if it is found to convey "the nature or function of the product." *Duluth News-Tribune v. Mesabi Pub. Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996). However, descriptive marks are only entitled to protection if they "become distinctive by acquiring a secondary meaning." *Id.* Plaintiffs have not presented evidence that Flavors has acquired a secondary meaning, and as a result, only Sensient is entitled to protection.

Under the second factor, the Court finds that these marks are very similar. Courts are to analyze "similarities of sight, sound, and meaning between two marks." *General Mills Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987). This analysis should not be completed in a

6

vacuum because the Court "must attempt to recreate the conditions in which buying decisions are made, and . . . what a reasonable purchaser in market conditions would do." *Calvin Klein Cosmetics Corp v. Lenox Labs.*, 815 F.2d 500, 504 (8th Cir. 1987). Also, where the goods at issue are virtually identical, "the degree of similarity necessary" decreases. *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 877 (Fed. Cir. 1992). Here we are dealing with products that are virtually identical, and marks that have strong phonetic similarity. Plaintiffs state that customers are contacted over the phone, and therefore, phonetic similarity becomes especially important. SensoryFlavors' choice of name is simply too close to Sensient, and this similarity weighs in favor of issuing the temporary restraining order. *See, e.g., Northam Warren Corp. v. Universal Cosmetic Co.*, 18 F.2d 774 (7th Cir. 1927) (Cuticlean infringed the trademark Cutex).

The third factor asks the degree to which the allegedly infringing product competes with the Plaintiff's goods. This factor weighs heavily in Plaintiffs' favor as both companies sell their products to food and food ingredient companies.

Under the fourth factor, the Court must determine whether Defendants intended to confuse the public. The prior relationship between Plaintiffs and Nicolais creates a strong inference of Defendant's intent to confuse the public. *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927 (10th Cir. 1986). While Defendants have provided their rationale for their choice of SensoryFlavors as a corporate name, it is insufficient to overcome the prior relationship and obvious prior knowledge Defendants had of Sensient Flavors' existence in the market. This factor weighs in favor of granting Plaintiffs' motion.

The fifth factor asks what degree of care is reasonably expected of potential customers. As the potential customers are sophisticated business entities, a high degree of care can be expected. Accordingly, this factor weighs in favor of Defendants.

The final factor in determining whether Plaintiffs are likely to succeed on their claim of trademark infringement under the Lanham Act seeks to determine whether there is any evidence of actual confusion. However, this factor is not relevant to this action as SensoryFlavors was only recently created, and it is simply too early for Plaintiffs to tender evidence of any actual confusion. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000).

The Court finds that Plaintiffs will likely prevail on their claimsof trademark infringement under the Lanham Act as the similarity between the two marks is likely to cause confusion. As noted above, Plaintiffs are also likely to prevail on their claims of unfair competition under the Lanham Act and Missouri law, trademark infringement under Missouri law, and their claims under Missouri's anti-dilution statute.

## B. IRREPARABLE HARM

"In trademark disputes, a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005). As the likelihood of confusion was determined in the analysis above, Plaintiffs have established a threat of irreparable harm to the movant.

## C. BALANCE OF HARM

While Defendants will probably suffer some harm from the issuance of a temporary restraining order, the balance of the harms tips in favor of Plaintiffs. Defendants have made very little use of the SensoryFlavors name up to this point, which indicates that they will incur very

8

little harm if this order is imposed. However, Defendants state that the time period in which they may use the Givaudan name is quickly drawing to a close and assert their need for a name so that they can move on with their business. While this argument is sympathetic, Plaintiffs assert that Defendants use of this name will damage the goodwill they have established in their industry, and this harm is significantly higher than that alleged by Defendants.

## D. *THE PUBLIC INTEREST*

Neither party has introduced strong evidence that the public interest is implicated by this action. If the public interest is implicated at all, it is that the public interest is protected by the enforcement of trademark laws.

Accordingly,

**IT IS HEREBY ORDERED** that upon receipt of the bond in the amount of $25,000.00, the Court enters the following Temporary Restraining Order:

> SensoryFlavors and its servants, agents, employees, successors, assigns, and all others acting in privity or in concert with SensoryFlavors, are enjoined from:
> a. using in any manner the SensoryFlavors name and logo or any related or derivative marks;
> b. using the Sensient marks, including but not limited to, Sensient Flavors, or any mark confusingly similar to the Sensient marks of any related or derivative marks, on or in connection with any unauthorized goods or services;
> c. disseminating, using or distributing any advertising or promotional materials, electronic or otherwise, that contain the SensoryFlavors name and logo, the Sensient marks, or any mark confusingly similar to the Sensient marks;
> d. disseminating, using or distributing any advertising or promotional materials, electronic or otherwise, that state or imply that SensoryFlavors is an authorized distributor of or are otherwise connected to Sensient;
> e. using the SensoryFlavors name and logo, the Sensient marks, or any mark confusingly similar to the Sensient marks in any other manner likely to cause confusion, mistake or deception as to the source or sponsorship of SensoryFlavors' goods or services;

9

f. holding themselves, and/or any business they are connected with, out to the public as being authorized by Sensient, or as being affiliated with or sponsored by Sensient in any manner, or committing any acts likely to imply such a relationship or affiliation;
g. passing off their products and services as originating with or sponsored or authorized by Sensient;
h. using and/or operating the URL, www.sensoryflavors.com;
i. further diluting the distinctive value of the Sensient marks; and
j. using or disseminating an false or misleading statements as to the nature, qualify, or characteristics of SensoryFlavors goods and services.

**IT IS FURTHER ORDERED** that a hearing on Plaintiff's request for preliminary injunctive relief will be held in the United States District Court for the Eastern District of Missouri, Courtroom 12 South, on **March 28, 2008** at **2:30 p.m.** Counsel for all parties affected by this request for injunctive relief shall be present.

Dated this ____ Day of March, 2008.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE