UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SENSIENT TECHNOLOGIES CORPORATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:08CV00336 ERW |
| SENSORYEFFECTS FLAVOR COMPANY, et al. | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment [doc. #73], Defendants' Motion for Summary Judgment [doc. #77] and Defendants' Motion to Strike Affidavit of Monica M. Riederer [doc. #89].

**I. PROCEDURAL HISTORY**

Sensient Technologies Corporation and Sensient Flavors LLC ("Sensient Flavors") (collectively, "Plaintiffs") brought this lawsuit against SensoryFlavors, Inc. ("SensoryFlavors"), SensoryEffects Flavor Company, Performance Chemicals & Ingredients Co. (Defendant PCI"), Diehl Food Ingredients, Inc. ("Defendant Diehl") and Highlander Partners, L.P. ("Defendant HP") (collectively, "Defendants"). Plaintiffs sought a temporary restraining order prohibiting SensoryFlavors from using their name and mark. The Court found for Plaintiffs and issued the temporary restraining order on March 21, 2008. SensoryFlavors then began using the names SensoryEffects Flavor Company and SensoryEffects Flavor Systems.[1] As a result of the

---

[1] Defendants state that they conduct business under the name SensoryEffects Flavor Systems, and as a result, that is the name the Court will use in this Memorandum and Order.

abandonment of the SensoryFlavors name and the subsequent name change, Plaintiffs withdrew their Motion for Preliminary Injunction.

Plaintiffs subsequently filed an Amended Complaint. In their Amended Complaint, Plaintiffs detailed six grounds for relief, and they seek relief based upon both the SensoryEffects Flavor Systems and the SensoryFlavors names. In Count 1, Plaintiffs seek to recover for Federal Trademark Infringement, Count 2 is a claim for Federal Unfair Competition, Count 3 is a claim for Federal False Advertising, Count 4 is a claim for Common Law Trademark Infringement and Unfair Competition, Count 5 is a claim for Trademark Infringement under Mo. Rev. Stat. § 417.066(1), and in Count 6 Plaintiffs seek to recover for Trademark Dilution under Mo. Rev. Stat. § 417.061(1).

## II. MOTION TO STRIKE

Defendants have filed a motion to strike the affidavit of Monica M. Reiderer. They assert that this affidavit should be struck pursuant to Fed. R. CIv. P. 56(e). This Rule requires that affidavits "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." If an affidavit does not satisfy these requirements, "it is subject to a motion to strike." *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972).

In this affidavit, Reiderer lists each exhibit supporting Plaintiffs' Motion for Summary Judgment and states that the exhibit "is a true and correct copy." The Court acknowledges that what Defendants assert is not that every one of these exhibits is inadmissible, but instead that some of them have not been properly authenticated or contain hearsay. The Court will only consider evidence "that would be admissible in evidence." The Motion to Strike will be granted, in part, and denied, in part.

## III. BACKGROUND FACTS[2]

Sensient Technologies Corporation ("Sensient") was previously known as Universal Foods. In 2000, Universal Foods decided to re-brand itself as Sensient, and invested time and money to rename itself and its subsidiaries, including Sensient Flavors. Sensient owns several trademarks, including SENSIENT, SENSIENT TECHNOLOGIES, SENSIJET, SENSIPEARL, SENSIPLAST, and SENSIROME. Sensient also uses the trade name Sensient Flavors. The Sensient marks and trade names have been used since 2000. Sensient Flavors employees are trained to identify their employer as "Sensient Flavors" when communicating with customers in person or over the phone.

Charles Nicolais ("Nicolais") and several other of Defendants' employees previously worked for Sensient Colors, a sister company of Sensient Flavors. Nicolais left Sensient Colors and started a company called Performance Chemicals and Ingredients, LLC. Nicolais later formed Performance Chemicals and Ingredients Co. (Defendant PCI). Defendant PCI purchased substantially all of the assets of Defendant Diehl in May 2006. In November 2006, Defendant PCI purchased substantially all of the assets, equipment, trademarks and trade names of a business named SensoryEffects. SensoryEffects' prior owners had filed an application for the registration of the SensoryEffects name and graphic on July 2004. The trademark was formally registered on July 3, 2007, however, the name and mark had been used in the market since July 2004.

On February 13, 2008, Defendant PCI acquired substantially all of the assets of Givaudan Flavors, Inc. ("Givaudan Flavors"), the dairy flavor systems business within Givaudan Flavors

---

[2] The Court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Facts [doc. #79], Plaintiffs' Response [doc. #85], Defendants' Reply [doc. #92], Plaintiffs' Statement of Uncontroverted Material Facts [doc. #74], Defendants' Statement of Facts in Opposition [doc. #88] and Plaintiffs' Reply [doc. #95].

Corporation. When Defendant PCI purchased Givaudan Flavors, they were not permitted to use the Givaudan Flavors name for more than sixty days after the purchase.

Nicolais and Dennis Reid, along with their counsel, were involved in selecting a new name for Givaudan Flavors. Nicolais made the final decision to utilize the name SensoryFlavors. Defendants have presented evidence to the Court that while Nicolais was aware that Sensient had a flavor corporation, he was not aware that they used the name Sensient Flavors. Defendants state that they consulted with their attorneys who searched PTO records and corporate names. They then developed the SensoryFlavors name through combining their SensoryEffects name that had been in use since 2004 and the Givaudan Flavors name. Representatives of Defendants have testified that they selected this name in order to capitalize upon the already established SensoryEffects name and mark and the goodwill established under the Givaudan Flavors name.

Defendants used the SensoryFlavors name from February 13, 2008 to March 14, 2008, ceasing their use of the name after this lawsuit was filed. During this period, Defendants conducted at least two presentations to customers with that name. Additionally, they used the name on correspondence, and released the name via press release. They also began to construct a website with the name, however, the site was always under construction. After this lawsuit was filed they changed their name to SensoryEffects Flavor Systems.

While their product markets differ slightly, the Parties are direct competitors, as they both sell flavor delivery systems to food and food ingredient companies. Plaintiffs have not produced any evidence of actual confusion over the SensoryEffects Flavor Systems name by any customers or potential customers. The Parties state that some of their initial client contacts come through phone calls to potential customers. However, sales are not completed during that initial phone call. Instead, they work with their potential customers in a collaborative process to produce a

product in accordance with the customer's specifications. Plaintiffs have introduced no evidence that Defendants attempted to lure their customers, and the evidence demonstrates that Defendants' customer base is the Givaudan Flavors customer base that they intended to capture when they entered this market. Defendants have introduced evidence that another competitor in their market does business under the name Sensus Flavors, and another corporation uses the name Symrise.

## IV. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the Court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1).

"By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a

5

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

**V.      DISCUSSION**

In their Amended Complaint, Plaintiffs assert six grounds for relief.[3] For each of their claims, they seek to recover for both Defendants' use of the SensoryFlavors name and the SensoryEffects Flavor Systems name.[4] In their Motions, both Parties have asked that the Court grant summary judgment in their favor on every Count in Plaintiffs' Amended Complaint. Defendants assert that summary judgment should be granted in their favor on Counts 1 through 5 for the SensoryFlavors name because it was not used in commerce. They assert that summary judgment is appropriate for the SensoryEffects Flavor Systems name on Counts 1 through 5 because Plaintiffs cannot meet their burden of showing that the name is likely to cause confusion to consumers. Finally, they ask that the Court grant summary judgment for both names in Count 6 because Plaintiffs cannot establish a likelihood of dilution. The Court will address these three arguments separately.

## A.    *USE IN COMMERCE*

Defendants assert that summary judgment should be granted in their favor because the SensoryFlavors name was never used in commerce. Plaintiffs' claims under the Lanham Act for trademark infringement (Count 1), unfair competition (Count 2) and false advertising (Count 3) all require that the mark be "used in commerce." *See* 15 U.S.C. § 1114(a); 15 U.S.C. § 1125(a); 15 U.S.C. § 1125(a)(1). Additionally, Plaintiffs' common law claims for unfair competition and

---

[3] In Count 1, Plaintiffs seek to recover for Federal Trademark Infringement, Count 2 is a claim for Federal Unfair Competition, Count 3 is a claim for Federal False Advertising, Count 4 is a claim for Common Law Trademark Infringement and Unfair Competition, Count 5 is a claim for Trademark Infringement under Mo. Rev. Stat. § 417.066(1), and in Count 6 Plaintiffs seek to recover for Trademark Dilution under Mo. Rev. Stat. § 417.061(1).

[4] Defendants have abandoned the SensoryFlavors name and state that they will not use the name in the future. Plaintiffs state that they are pursuing their claims against this name because they want the Court to issue a permanent injunction to bar Defendants from using the name in the future.

7

trademark infringement (Count 4) have been found to "substantially overlap" with the Lanham Act, and use in commerce is also required. *Steak n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983 (E.D. Mo. 2004) (citing *Emerson Elec. Co. v. Emerson Quiet Kool Corp.*, 577 F.Supp. 668, 676 (E.D. Mo. 1983)). Finally, Plaintiffs' claim for trademark infringement (Count 5) under Missouri law requires the application of the same test that is used for the federal cause of action. *See* Mo. Rev. Stat. § 417.056(1).

The term "use in commerce" is defined within the Lanham Act as "the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. The statute differentiates between marks that are used in commerce on goods and on services. Defendants produce flavor delivery systems for food and food ingredient companies, and as a result, the Court is concerned with the requirements for goods. A mark is used in commerce on goods where "it is placed in any manner on the goods or their containers . . . and the goods are sold or transported in commerce." 15 U.S.C. § 1127. This "use must be 'deliberate and continuous, not sporadic, casual or transitory.'" *Larson v. Terk Technologies Corp.*, 151 F.3d 140, 146 (4th Cir. 1998) (quoting *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271-72 (2d Cir. 1974)).

Defendants used the SensoryFlavors name from February 13, 2008 to March 14, 2008, ceasing their use of the name after this lawsuit was filed. Their use of the SensoryFlavors name was limited. The evidence shows that they conducted at least two presentations to customers with that name. Additionally, they used the name on correspondence, and released the name via press release. They also began to construct a website with the name, however, the site was always under construction. For these claims to succeed, Plaintiffs must demonstrate that the name was used in commerce, which requires the "sale of goods in commerce." *ConAgra, Inc. v. George A. Hormel, & Co.*, 990 F.2d 368, 371 (8th Cir. 1993). It is clear that none of the ways in

which Defendants used the SensoryFlavors name satisfies the requirements for use in commerce. As a result, summary judgment must be granted for Defendants on Counts 1, 2, 3, 4 and 5 for their use of the SensoryFlavors name.

## B. *LIKELY TO CAUSE CONFUSION*

Defendants also ask that the Court grant summary judgment in their favor because Plaintiffs cannot meet their burden of showing that the SensoryEffects Flavor Systems name is likely to cause confusion to consumers. Plaintiffs' claims under the Lanham Act for trademark infringement (Count 1), unfair competition (Count 2) and false advertising (Count 3) all require that the infringing use be "likely to cause confusion or to cause mistake." 15 U.S.C. § 1114(a); 15 U.S.C. § 1125(a); 15 U.S.C. § 1125(a)(1)(A). Additionally, Plaintiffs' common law claims for unfair competition and trademark infringement (Count 4) also require that the defendant use "a similar mark or name that is likely to cause confusion as to the source of products sold by defendant." *Steak n Shake Co.*, 323 F. Supp. 2d at 990 (citing *Emerson Elec. Co.*, 577 F.Supp. at 676). Finally, Plaintiffs' claim for trademark infringement (Count 5) under Missouri law also requires that the use be "likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services." Mo. Rev. Stat. § 417.056(1).

To determine whether there is a likelihood of confusion, the Court must consider "six non-exclusive factors." *Everest Capital Ltd. v. Everest Funds Management, L.L.C.*, 393 F.3d 755, 759 (8th Cir. 2005). These factors are:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark ; (3) the degree of competition between the products; (4) the alleged infringers intent to 'pass off' its goods as the trademark owner's; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

9

*Luigino's Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999). "None of these factors alone is dispositive." *Bebe Stores, Inc. v. May Dept. Stores Intern., Inc.*, 230 F.Supp 2d 980, 991 (E.D. Mo. 2002).

Under the first factor, the Court must consider the strength of the owner's mark. *See Luigino's Inc.*, 170 F.3d at 830. A mark can be classified into the following "categories of generally increasing distinctiveness; . . . "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A fanciful mark is the strongest kind of mark, and is a mark that "bears no logical relationship to the product or service it is used to represent." *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1357-58 (11th Cir. 2007) (using the example of "Kodak"). Sensient is a fanciful word that was coined for the express purpose of functioning as a trademark, brand, and corporate family of names. Sensient is a fanciful mark entitled to the broadest protection.[5] *Two Pesos, Inc.*, 505 U.S. at 768.

While Sensient is entitled to broad protection, Plaintiffs cannot claim an exclusive right to the "Flavors" portion of their Sensient Flavors name. Flavors is a generic term as it "does not identify the source of a product, but rather indicates the basic nature of the product." *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 974 (8th Cir. 2006). At best, Flavors may be a descriptive mark if it is found to convey "the nature or function of the product." *Duluth News-Tribune v. Mesabi Pub. Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996). However, descriptive marks are only entitled to protection if they "become distinctive by acquiring a secondary meaning." *Id.*

---

[5] The Court notes that there is some dispute between the parties over whether the Sensient name is actually a descriptive name, combining the words "sensory" and "ingredients." For the purposes of this Motion, Defendants state that they do not object to the finding that this name is fanciful.

Plaintiffs have not presented evidence that Flavors has acquired a secondary meaning, and as a result, only Sensient is entitled to protection. This first factor favors Plaintiffs.

Under the second factor, the Court must consider the similarity of the marks. Courts are to analyze "similarities of sight, sound, and meaning between two marks." *General Mills Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987). This analysis should not be completed in a vacuum because the Court "must attempt to recreate the conditions in which buying decisions are made, and . . . what a reasonable purchaser in market conditions would do." *Calvin Klein Cosmetics Corp v. Lenox Labs.*, 815 F.2d 500, 504 (8th Cir. 1987).

The Parties have submitted evidence to the Court detailing the conditions in which purchasing decisions are made for their products. The Parties sell their products to sophisticated customers after a collaborative process in which they work with the buyer to produce a product in accordance with the customer's specifications. As a result of this long, interactive process and the sophistication of their consumers, it is highly unlikely that these buyers would confuse these two names, and the likelihood of confusion is diminished.

Plaintiff responds that they are concerned with what is known as "initial interest confusion." They state that Defendants will be able to use their name to gain access to customers, and even if the customer's confusion over the name dissipates during the collaborative process, they state that they will lose potential purchasers because of their initial confusion. This theory has not been adopted by the Eighth Circuit. *Northland Ins. Co. v. Blaylock*, 115 F.Supp.2d 1109, 1118-19 (D. Minn. 2000). However, even assuming that it should be applied in this instance, Plaintiffs' argument would still lose on this factor. Plaintiffs have failed to introduce any evidence of any customer experiencing "initial interest confusion." Because initial client contact is sometimes made through phone calls to potential customers, the Court must consider how these

names sound. SensoryEffects Flavor Systems sounds different than Sensient Flavors. Plaintiffs encourage the Court to disregard the word "Systems" in Defendants' name, however, it is clear that there is a distinct auditory difference between the name SensoryEffects Flavor and Sensient Flavors.

Some courts that have analyzed initial interest confusion have relied upon the consumers to which the products were marketed. *See, e.g., Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 383 (7th Cir. 1996). Where the new company markets its product as an alternative to the senior mark, and does not attempt "to lure potential customers away . . . by passing off its [product] as [Plaintiffs']" they find no initial interest confusion. This logic applies to the pending action. Plaintiffs have introduced no evidence that Defendants attempted to lure their customers, and the evidence demonstrates that Defendants' customer base is the Givaudan Flavors customer base that they intended to capture when they entered this market. As a result, Plaintiffs have failed to introduce evidence demonstrating a genuine issue of material fact on the similarity of the marks or any initial interest confusion, and this factor weighs in favor of Defendants.

The third factor asks the degree to which the allegedly infringing product competes with Plaintiffs' goods. While their product markets differ slightly, the Parties are direct competitors as they both sell flavor delivery systems to food and food ingredient companies. As a result, this factor weighs in favor of Plaintiffs.

Under the fourth factor, the Court must determine whether Defendants intended to confuse the public. When considering Plaintiffs' motion for a temporary restraining order, the Court noted that Nicolais selected the SensoryFlavors name and he had been previously employed by Plaintiffs. The Court found that this created a strong inference of Defendants' intent to confuse the public. *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927 (10th Cir.

1986). However, additional discovery has been completed, and the evidence that has been submitted to the Court does not support this conclusion. Nicolais previously worked for Sensient Colors, a sister company of Sensient Flavors. Defendants have presented evidence to the Court that while Nicolais was aware that Sensient had a flavor corporation, he was not aware that they used the name Sensient Flavors. However, even assuming that Nicolais knew of Sensient Flavors, his knowledge does not weigh this factor towards Plaintiffs because "[k]nowledge of another's product and an intent to compete with that product is not, however, equivalent to an intent by a new entrant to a market to mislead and to cause customer confusion." *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987).

Defendants state that when SensoryEffects purchased the Givaudan Flavors Corporation, they were not permitted to use the Givaudan Flavors Corporation name for more than sixty days after the purchase. Defendants state that they consulted with their attorneys who searched PTO records and corporate names. They then developed the SensoryFlavors name through combining their SensoryEffects name that had been in use since 2004 and the Givaudan Flavors Corporation name. After this lawsuit was filed they changed their name to SensoryEffects Flavor Systems.

The facts introduced by Defendants demonstrate that Defendants did not intend to deceive the public and instead selected these names in order to capitalize upon the already established SensoryEffects name and mark and the goodwill established under the Givaudan Flavors Corporation name. Merging these two names is a logical means to form a name, and does not indicate an intent to confuse. *Duluth News-Tribune, a Div. of Northwest Publ'ns, v. Mesabi Pub. Co.*, 84 F.3d 1093, 1097-98 (8th Cir. 1996). Plaintiffs have failed to introduce any evidence that Defendants intended to deceive the public. Tellingly, Plaintiffs' witnesses even stated that Defendants never misrepresented their products or attempted to pass off their products as

Plaintiffs' products, which is the real harm this factor seeks to identify. There is no issue of fact on whether Defendants intended to confuse the public, and the fourth factor weighs in favor of Defendants.

The fifth factor asks whether there have been incidents of actual confusion. *Luigino's Inc.*, 170 F.3d at 830. "Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988). While this is "an important factor" it "is not essential to a finding of trademark infringement." *Iowa Paint Mfg. Co. v. Hirshfield's Paint Mfg., Inc.*, 296 F.Supp.2d 983, 997 (S.D. Iowa 2003) (citing *David Sherman Corp. v. Heublein, Inc.*, 340 F.2d 377, 380 (8th Cir. 1965); *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). Plaintiffs have failed to produce any evidence of actual confusion, and there is no issue of fact on this factor.[6] The absence of actual confusion is especially telling as the SensoryEffects Flavor Systems name has been used by Defendants for approximately a year. As a result, the fifth factor weighs in favor of Defendants.

The sixth, and final, factor asks about "the type of product, its cost, and conditions of purchase." *Luigino's Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999). The Parties have failed to introduce evidence on the cost of this product, however, it is well established that the Parties sell their products to sophisticated customers after a collaborative process in which they work with the buyer to produce a product in accordance with the customer's specifications. As a result of this collaborative process, the likelihood of confusion is diminished, and this factor weighs in favor of Defendants.

---

[6] In Plaintiffs' Statement of Uncontroverted Material Facts [doc. #74] they detail several instances of confusion. These incidents were all related to Defendants' use of the SensoryFlavors name, and not their SensoryEffects Flavor Systems name.

These six factors must be considered to determine whether there is a likelihood of confusion. *Everest Capital Ltd.*, 393 F.3d at 759. The Court's review of these factors demonstrates that there is no likelihood of confusion. Plaintiffs have a protectable interest in their name due to the strength of their mark, and they directly compete against Defendants, however, this simply is not sufficient for a reasonable jury to "return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Plaintiffs have failed to produce sufficient evidence that there is a likelihood of confusion, which is a necessary element on Counts 1, 2, 3, 4 and 5 of their Amended Complaint. Accordingly, summary judgment will be granted for Defendants on Counts 1, 2, 3, 4 and 5 for their use of the SensoryEffects Flavor Systems name.

## C. *LIKELIHOOD OF DILUTION*

In Count 6, Plaintiffs seek to recover for trademark dilution under Mo. Rev. Stat. § 417.061(1). This statute provides for injunctive relief where there exists a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Mo. Rev. Stat. § 417.061(1).[7] "The gravamen of a dilution complaint is that the continuing use of a mark similar to the plaintiff's mark will inexorably have an adverse effect upon the value of the plaintiff's mark, and that, if he is powerless to prevent such use, the plaintiff's mark will eventually be deprived of all distinctiveness . . . [D]ilution is a cancer which, if allowed to spread, will inevitably destroy the advertising value of the mark." *WSM, Inc. v. Hilton*, 724

---

[7] There are very few Missouri cases that have addressed this statute, however, the statute is based upon the Model State Trademark Act, and in considering this Motion, the Court looked to cases from other states that have enacted similar statutes. *See Cushman v. Mutton Hollow Land Development, Inc.*, 782 S.W.2d 150, 161 (Mo. Ct. App. 1990).

15

F.2d 1320, 1332 (8th Cir. 1984) (quoting 3 *The Law of Unfair Competition, Trademarks and Monopolies* 954-55 (3d ed. Cum. Supp. 1982)).

Defendants ask that the Court grant summary judgment on this claim because they assert that Plaintiffs cannot establish a likelihood of dilution. Most courts find that claims for trademark dilution succeed only where "plaintiff's mark is arbitrary, coined, fanciful, or has become distinctive by acquiring a secondary meaning." *Id.* As the Court previously discussed, Sensient is a fanciful mark.[8] *Two Pesos, Inc.*, 505 U.S. at 768. As a result, this name satisfies this initial requirement. However, this is not the end of the Court's inquiry, as the Court must also consider "evidence of third party usage of similar marks on similar goods." *Steak n Shake Co. v. Burger King Corp.*, 323 F.Supp.2d 983, 992 (E.D. Mo. 2004) (quoting *General Mills, Inc.*, 824 F.2d at 627). This inquiry is "relevant to show that the mark is relatively weak and entitled to a narrower scope of protection." *Id.*

Defendants have introduced evidence that another competitor in their market does business under the name Sensus Flavors, and another corporation uses the name Symrise. A "mark may be classified as weak where there has been extensive third party use of similar marks on similar goods." *EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, 2006 WL 892718, at *8 (D.N.J. April 4, 2006) (internal citations omitted.) These uses demonstrate that while the mark is a fanciful word, "the mark is relatively weak." *General Mills, Inc.*, 824 F.2d at 627.

This statute exists to prevent the "dilution of the distinctive quality of a mark." Mo. Rev. Stat. § 417.061(1). Only marks that are unique or distinctive are entitled to protection under this

---

[8] As the Court stated previously, the Parties disptue whether the Sensient name is actually a descriptive name, combining the words "sensory" and "ingredients." For the purposes of this Motion, Defendants state that they do not object to the finding that this name is fanciful.

16

statute. *See Cushman*, 782 S.W.2d at 162. Plaintiff has failed to introduce evidence showing that their mark is distinctive, and instead, Defendants have established that several other corporations in the same market utilize very similar sounding names. *WSM, Inc.*, 724 F.2d at 1332. As a result, there is no genuine material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Defendants have established that Plaintiffs' mark is actually a weak mark, and is not entitled to protection under Missouri's trademark dilution statute. As a result, summary judgment is appropriate on all of Plaintiffs' claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [doc. #73] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [doc. #77] is **GRANTED.** All of Plaintiffs' claims are **DISMISSED, with prejudice.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Affidavit of Monica M. Riederer [doc. #89] is **DENIED, in part,** and **GRANTED, in part.**

So Ordered this 12th Day of June, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE